IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

HOMER McCRACKLIN                                                                  PLAINTIFF

v.                                              3:05CV00147-WRW

HANSON PIPE & PRODUCTS, INC.                                                  DEFENDANT

## ORDER

On June 23, 2005, Plaintiff, acting *pro se*,[1] brought this action alleging that he was wrongfully terminated on the basis of race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981. He also alleged defamation and outrage under state law. Pending is Defendant's Motion for Summary Judgment (Doc. No. 44). In his response, Plaintiff abandons his state law allegations.[2] For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED.

**I.    Statement of Facts**

Plaintiff, an African-American, worked in Defendant's maintenance department from April 1985 until the date of his termination on January 4, 2005. On December 18, 2004, Richie Davis, a white male supervisor, asked Plaintiff to help him test piping. Plaintiff refused to help Mr. Davis because he already had been given another assignment. Plaintiff maintains that when he refused to help Mr. Davis, he was cursed and called a "nigger."[3]

---

[1] Plaintiff later retained counsel, attorney Peggy Lee, who entered her appearance on Jan. 9, 2006 (Doc. No. 6).

[2] Doc. No. 52-1.

[3] Doc. No. 53.

While Mr. Davis and Plaintiff were talking, Grady Williford, the plant manager, passed by in his truck. Mr. Davis waved Mr. Williford over to them. Mr. Davis told Mr. Williford that Plaintiff "smelled like a brewery" and needed to be handled.[4] Based on Mr. Davis's remarks, Mr. Williford called Plaintiff over to him. Mr. Williford attests that Plaintiff's "eyes were glazed over, he slurred his words . . . and could not be easily understood."[5] Mr. Williford also noticed a strong smell of alcohol on Plaintiff.

Based on his observations, Mr. Williford advised Plaintiff that he would have to take a drug and alcohol test. When Plaintiff initially refused to take the test, Mr. Williford told him that refusal could result in an automatic dismissal. Plaintiff was taken to the plant locker room where he met with two other supervisors, Mr. Keith Walker and Mr. Julian Harviston. Both men noticed that Plaintiff had slurred speech, and Plaintiff admitted to them that he did not think he could pass an alcohol test.[6] This admission was confirmed by deposition testimony.[7] Because no union representative was at the plant that day, a shop steward, Mr. Lloyd Banks was contacted and asked to come meet with Plaintiff. Plaintiff eventually consented to be taken by Mr. Walker to the Crittenden Memorial Hospital for drug and alcohol testing.

Plaintiff was suspended that afternoon, and advised by letter, that he would remain suspended until the results of his blood tests were received.[8] The blood work was originally sent

---

[4]Doc. No. 46-2.

[5]Doc. No. 45.

[6]Doc. Nos. 46-8 and 46-9.

[7]Doc. No. 46-13.

[8]Doc. No 46-4.

by the hospital to the Arkansas Health Department, Office of Alcohol Testing in Little Rock for analysis. But, the Heath Department refused to conduct the test and sent the untested sample back to Defendant. Janice Davis, one of Defendant's office employees, retrieved the blood sample from its post office box and delivered the sealed container to Preventative Medicine Specialty in West Memphis. On January 4, 2005, Preventive Medicine advised Defendant that the test results showed that Plaintiff's blood alcohol content had been .27%, which was over the .08 legal limit in Arkansas. Mr. Williston talked with the plant's General Manager, Don Powell, and the plant's Labor Relations Manager, Rob Rhinehold, and together they decided to send Plaintiff a Notice of Termination.[9]

Plaintiff filed a discrimination charge with the EEOC on March 10, 2005.[10] A Dismissal and Notice of Rights Form was mailed to Plaintiff on March 24, 2005.[11]

## II.     Standard of Review

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[12] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that

---

[9] Doc. No. 46-6.

[10] Doc. No. 1.

[11] *Id.*

[12] *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed R. Civ. P. 56.

properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[13]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[14] Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[15] This Court must view the facts in the light most favorable to the party opposing the motion.[16] The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[17]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[18]

---

[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[14] *Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[15] *Id.* at 728.

[16] *Id.* at 727-28.

[17] *Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[18] *Anderson*, 477 U.S. at 248.

**III.    Analysis**

Plaintiff asserts that he suffered race discrimination in violation of Title VII and § 1981. The burden of proof for claims brought under Title VII and § 1981 is the same.[19] Therefore, I will consider the Title VII and the § 1981 claims together.

The applicable analysis was established in *McDonnell Douglas Corp. v. Green*,[20] and involves a burden-shifting framework.[21] "Under the *McDonnell Douglas* framework, a presumption of discrimination is created when the plaintiff meets [his] burden of establishing a *prima facie* case of employment discrimination. A minimal evidentiary showing will satisfy this burden of production."[22] Once a plaintiff successfully establishes a *prima facie* case, the burden shifts to the employer to articulate "a legitimate, non-discriminatory reason for its adverse employment action."[23] If the employer meets its burden, "the presumption of discrimination disappears, requiring the

---

[19] *See Roark v. City of Hazen*, 189 F.3d 758, 761 (8th Cir. 1999); *Chambers v. Wynne Sch. Dist.*, 909 F.2d 1214, 1216 (8th Cir. 1990).

[20] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-04 (1973).

[21] *Davis v. KARK-TV, Inc.*, 421 F.3d 699, 704 (8th Cir. 2005).

[22] *Id.*

[23] *Id.* (quoting *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1309 (8th Cir. 1994)).

plaintiff to prove that the proffered justification is merely a pretext for discrimination."[24]  The plaintiff has the burden of persuasion at all times.[25]

To establish a *prima facie* case of discrimination, Plaintiff must show that: (1) he is a member of a protected class; (2) he met the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) similarly situated employees that were not members of the protected class were treated differently.[26]  A minimal evidentiary showing will satisfy this burden of production.[27]

Plaintiff first argues that the test results of a blood sample that had been in a post office box for two weeks could not have been valid; therefore, Defendant should not have considered them in when deciding to terminate him.  However, whether or not the blood sample result was accurate is not a factor because Plaintiff fails to make his *prima facie* case by failing to show (1) that he was meeting his employer's expectations and (2) that similarly situated employees were treated differently.

An employee cannot be meeting his employer's expectations when he is under the influence of alcohol at work.  Even without the blood alcohol test there was ample evidence of Plaintiff's intoxication on the job.  Plaintiff's admission to more than one employee that he might fail the drug test coupled with the observations of apparent drunkenness by several  supervisors, warranted

---

[24]*Id*.

[25]*Id*.

[26]*McDonnell Douglas*,  411 U.S. at 802-03; *Davis*, 421 F.3d at 703.

[27]*Id*.

Plaintiff's dismissal. Common sense dictates that termination is around the corner when one is under the influence of alcohol at work. There is insufficient evidence that Plaintiff's termination was motivated by racism.

Plaintiff avers that Mr. Davis called him a "nigger". This is without doubt highly offensive, and is purely racist. But, assuming Mr. Davis did this (as I must when considering a motion for summary judgment), the Eighth Circuit has clearly held that a few isolated incidents of racial animus are not sufficient to show the work place was permeated with racial tension.[28]

Second, Plaintiff has not shown that similarly situated employees that were not members of the protected class were treated differently. The test to determine whether employees are "similarly situated" to warrant a comparison is a "rigorous" one.[29] "Specifically, the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances."[30]

Plaintiff argues that Mr. Davis is similarly situated. I disagree. Plaintiff admits in his response that Mr. Davis and he did not hold the same position. Mr. Davis was a supervisor and not subject to the same standards as Plaintiff. More importantly, Plaintiff was accused of drinking at work. While Plaintiff has produced evidence that Mr. Davis may have been motivated by racial animus, this evidence is overridden by the fact that other supervisors confirmed that Plaintiff was exhibiting characteristics of being under the influence of alcohol. Mr. Davis is accused of making offensive remarks; however, Mr. Davis played no part in Defendant's decision to terminate Plaintiff.

---

[28] *Singletary v. Missouri Dept. of Corrections*, 423 F.3d 886, 893 (8th Cir. 2005) ("racial slurs alone do not render a work environment hostile as a matter of law.").

[29] *Id.*; *see also Equal Employment Opportunity Commission v. Kohler Co.*, 335 F.3d 766, 775 (8th Cir. 2003).

[30] *Id.* at 776.

In his twenty years employed by Defendant, Plaintiff never reported any discrimination.[31] Because Plaintiff has not produced any evidence that a similarly situated white person, who was accused of being under the influence of alcohol at work, but was not fired, Plaintiff's discrimination and wrongful termination claims fail.

### IV.  Conclusion

Viewing all facts in the light most favorable to Plaintiff, no genuine issue of material fact remains to be tried.  Defendant's Motion for Summary Judgment is GRANTED.  Defendant's Motion in Limine (Doc. No. 56) is DENIED as MOOT.

IT IS SO ORDERED this 27th day of January, 2007.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[31]*See Mitchell v. City of Dumas, Ark.*, 187 Fed. Appx. 666 (8th Cir. 2006) (Commenting that more than a few isolated incidents of racial animus required to show the work place was permeated with racial tension).